# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case Nos. 1:95-cr-10035; |
| ) | 1:00-cr-10007 |
| DEXTER LORANTHO JEMISON, *also* ) | |
| *known as* Terry L. Jemison, ) | |
| ) | |
| Defendant. ) | |

## ORDER & OPINION

This matter is before the Court on virtually identical *pro se* Motions for Compassionate Release filed in each of Defendant Jemison's cases and similarly identical counseled Amended Motions for Compassionate Release. (Case No. 95-10035, dkts. 48, 54; Case No. 00-10007, dkts. 177, 184). The Government has responded (Case No. 95-10035, dkt. 57; Case No. 00-10007, dkt. 187) and Probation has filed a recommendation (Case No. 95-10035, dkt. 53; Case No. 00-10007, dkt. 183) at the Court's direction. This matter is ripe for review. For the following reasons, the Motions are denied.

### BACKGROUND

In December 2000, the Court revoked Defendant's supervised release in Case No. 95-10035 due to new law violations in the form of armed robbery and using a firearm in connection with a crime of violence, crimes for which Defendant was convicted in Case No. 00-10007. (Case No. 95-10035, dkt. 32). The Court sentenced Defendant to 24 months' imprisonment in Case No. 95-10035, to be served

consecutive to the 252-month[1] custodial sentence imposed in Case No. 00-10007. (Case No. 95-10035, dkt. 32). Defendant is projected to be released on May 27, 2022. (Case No. 95-10035, dkt. 53 at 1).

The instant motion arises from the ongoing COVID-19 pandemic. Defendant is incarcerated at United States Penitentiary (USP) Big Sandy, where there are currently three active COVID-19 cases among the inmate population and six active cases among staff; 72 inmates and 74 staff members were previously infected and have recovered. *COVID-19*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Jan. 8, 2021).[2] If released, Defendant proposes residing with his brother, Terry Jemison, in Cincinnati, Ohio, a placement the Central District of Illinois Probation office finds suitable but which has not been reviewed or approved by the Southern District of Ohio. (Case No. 95-10035; dkt. 53 at 3).

---

[1] In Case No. 00-10007, Defendant was sentenced to 168 months' incarceration for armed robbery and 84 months' incarceration for using/carrying a firearm during a crime of violence, to be served consecutively. (Case No. 95-10035, Dkt. 53 at 1).

[2] The BOP website contains the following disclosure:
> These data are compiled from a variety of sources and reviewed by BOP Health Services staff before documented for reporting. **Not all tests are conducted by and/or reported to BOP.** The number of positive tests at a facility is not equal to the number of cases, as one person may be tested more than once. The number of tests recorded per site reflects the number of persons at the specific facility who have been tested, whether at that site or at a prior facility.

*COVID-19*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Jan. 8, 2021) (emphasis in original). The website further indicates there have been 668 COVID-19 tests conducted at USP Big Sandy, 21 are pending, and there have been a total of 92 positive tests. *Id.*

## LEGAL STANDARD

The First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to allow defendants to ask the sentencing court for compassionate release. Pub. L. No. 115-391 § 603(b), 132 Stat. 5194, 5239. The decision whether to grant compassionate release is within a district judge's discretion, the standard for which is set by § 3582(c)(1)(A). *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020). Under the statute, there are three requirements.

First, a defendant may not bring a compassionate release motion until either (a) the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or (b) 30 days lapse "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A). Some courts have held this requirement may be waived, *e.g., United States v. Coles*, 455 F. Supp. 3d 419, 424–425 (E.D. Mich. 2020), while others have held it may not, *e.g., United States v. Albertson*, No. 1:16-CR-00250, 2020 WL 1815853, at *2 (S.D. Ind. Apr. 8, 2020). The undersigned has yet to decide that question.

Second, the defendant must either be at least 70 years of age and have served 30 years of the sentence for which the defendant is currently imprisoned, § 3582(c)(1)(A)(ii), or demonstrate "extraordinary and compelling reasons warrant" compassionate release, § 3582(c)(1)(A)(i). The policy statement issued by the United States Sentencing Commission, U.S.S.G. § 1B1.13, though not currently binding on district judges, provides a "working definition of 'extraordinary and compelling

reasons' " that can "guide [judicial] discretion without being conclusive." *Gunn*, 980 F.3d at 1180. Subsections (A)–(C) of the Application Note to § 1B1.13 enumerate three specific circumstances that qualify as "extraordinary and compelling reasons": (A) diagnosis of a terminal illness or serious condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence; or (C) "death or incapacitation of the caregiver of the defendant's minor child" or the "incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." § 1B1.13, Application Note 1(D).

Third, the Court must consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." § 3582(c)(1)(A).

## DISCUSSION

As explained in the Court's prior Order denying Defendant's Motions for Early Termination of Probation or Supervised Release (*E.g.*, Case No. 95-10035, dkt. 52), Defendant has completed the custodial sentence imposed in Case No. 00-10007. His request for compassionate release in Case No. 00-10007 is thus mooted by his release from that custodial sentence and is denied as such.

4

Accordingly, the Court turns to Defendant's requests in Case No. 95-10035. The Government argues Defendant failed to adequately exhaust his administrative remedies because he did not appeal the Warden's decision to deny[3] his request for compassionate release. (Case No. 95-10035, dkt. 57 at 24). However, Defendant's request was received by the Warden's office on November 23, 2020, and while his *pro se* request for compassionate release was filed less than 30 days later on December 7, 2020, 30 days had certainly lapsed when the Government filed its Response on January 5, 2021. Regardless of whether Defendant adequately exhausted his administrative remedies, however, the Court cannot grant his request.

Defendant does not present any extraordinary and compelling reason enumerated in the relevant Application Note, which the Court looks to for guidance. He instead argues the general risk of contracting COVID-19 constitutes extraordinary and compelling circumstances. (*See* Case No. 95-10035, dkt. 54 at 12). The Court is skeptical of this stance. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."). However, even assuming Defendant had presented extraordinary and compelling reasons, the § 3553(a) factors militate against release.

---

[3] The administrative request was denied because Defendant apparently did not provide necessary information; specifically, the denial suggests Defendant failed to state sufficiently extraordinary and compelling reasons and include a release plan in his request. (Case No. 95-10035, dkt. 57-5 at 1). The Government seems to argue these failures render his exhaustion attempt inadequate. (Case No. 95-10035, dkt. 57 at 24).

Defendant is currently serving a sentence for violating the terms of his supervised release by committing armed robbery. This is undoubtedly serious and deserving of harsh punishment. Defendant's personal history and characteristics also demonstrate a proclivity for violent crime and substance abuse (*see* Case No. 95-10035, dkts. 54 at 4–6; 56 at 57), a proclivity which has continued to manifest throughout the entirety of his incarceration in his scores of institutional infractions ranging from possession of contraband to assault and battery to making sexual propositions and threats (Case No. 95-10035, dkt. 53 at 1–3). As recently as October 2020, Defendant identified himself as affiliated with a gang, though he claims he "[doesn't] have to put in work anymore" because he is older. (Case No. 95-10035, dkt. 56 at 56). While Defendant has completed several educational and vocational courses while incarcerated (Case No. 95-10035, dkt. 54-2), his frequent illicit conduct and continued affiliation with a dangerous gang eclipses the mitigating effect of his steps toward rehabilitation through education. Holistic consideration of the § 3553(a) factors—specifically, the need for deterrence, protection of the public from further crimes of the defendant, and reflection of the seriousness of the defendant's offenses—overwhelmingly disfavor release here.

The Court is truly sympathetic to Defendant's troubled upbringing and mental health issues, but there comes a time in a person's life when they must take responsibility for matters within their control. That time has long passed for Defendant, who is now 50 years of age and ought to know the difference between right and wrong. Only he has the power to make the commitment to bettering himself and

leading a lawful and productive life. The Court urges Defendant to begin on that path by reenrolling in the Residential Drug Abuse Program and working toward obtaining his GED during his remaining time in custody.

## CONCLUSION

For the foregoing reasons, Defendant's *pro se* request for compassionate release and counseled Amended Motion for Compassionate Release in Case No. 00-10007 (dkts. 177, 184) are DENIED AS MOOT and his *pro se* request for compassionate release and counseled Amended Motion for Compassionate Release in Case No. 95-10035 (dkts. 48, 54) are DENIED.

SO ORDERED.

Entered this 8th day of January 2021.

s/ Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge